ORIGINAL

FILED-USDC-NDTX-DA '26 NOV 2 AM11:33

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DHRUV NANDAKUMAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | 3:26-cv-02535-X-BW |
| | § | |
| UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S TRO APPLICATION**

TO THE HONORABLE JUDGE BRANTLEY STARR:

Now comes Plaintiff and makes this reply in support of his TRO and Preliminary Injunction Motion and in support thereof would show as follows:

## INTRODUCTION

After the second of two isolated events, in August 2023 and March 2025, Defendants recognized Plaintiff's possible impairment. They knew his diagnoses and treatment before the May 7, 2025 vote, and before the July 7, 2025 final dismissal received his requests for an incomplete, time off and a research year, his plan to take a leave of absence if reinstated, and his offer to accept conditions, including structured oversight. (App. 2, 5, 11–12, 19–20, 23, 62, 91; Doc. 32 ("Resp.") at 4, 30.) Instead of engaging with those requests, Defendants refused interaction on accommodations, and UTSW's Office for Access & Title IX ("OATIX") closed his file. Then they checked the OATIX box in a last sweep to shut the door against Plaintiff without the decisionmakers weighing the prospective accommodations. (Resp. 66–67; App. 22.)

While injunctive relief does not require intent, see *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005), the evidence shows deliberate conscious indifference toward

Plaintiff, including the shaping of records and courses of action throughout the appeal process. (App. 20–24, 97–99, 135; Resp. 66–67.) Because "interim relief may rest on a substantial likelihood of success on even one claim," *R.J. Reynolds Tobacco Co. v. FDA*, 189 F.4th 432, 445 (5th Cir. 2026), Plaintiff here focuses on the insolence of Defendants in violating Title II of the ADA and § 504 by dismissing him before engaging in interactive discussion and weighing required accommodations. (See Resp. 5.)

> When an employer does not engage in a good faith interactive process, that employer violates the ADA—including when the employer discharges the employee instead of considering the requested accommodations.

*EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). The State's due-process, Title VI and VII, § 1983 and Texas-law arguments, and the cases it cites for them (*Iqbal*, *Jones*, *Diggs*, *Fort Bend*, *Jackson*, *Huff*, *Twyman*, *Petta*, *Will*, *Perez*, *Davis*, *Ewing*, *Villarreal* and *Doe*), go to due process and other causes of action not presented in the motion. (Resp. 5, 7–10.)

## I. UTSW KNEW OF HIS DISABILITY AND HIS REQUESTS

After the March 21–22, 2025 events (App. 7, 119), Dean Mihalic wrote on March 24: "Your recent behavior suggests you may be impaired and unable to participate in UT Southwestern-related activities in a fit and safe manner." (App. 91.) UTSW removed him under its fitness-for-participation policy, not as an accommodation, scheduled him with Dr. Isabel Clark, its psychiatrist treating him since October 2024 (App. 4, 63, 91), and after his April 11 clearance sent him to the Student Promotions Committee without an interactive process about accommodations or its policy's alternatives (App. 119; Resp. 33). This Court has held that leave "is not necessarily a reasonable accommodation." *Reyna v. Epiroc Drilling Sols., LLC*, No. 3:23-cv-1005-X, 2025 WL 317568, at *20 (N.D. Tex. Jan. 28, 2025).

His May 5 letter to Dean Mihalic for the Committee disclosed his diagnoses and treatment (App. 11–12, 66–67); on May 6 he asked Dean Barker for a health-related incomplete and was told the failing grade would stand (App. 12). The Committee met on May 7, and Plaintiff had been told he could not attend (App. 13); its May 9 letter cites dishonesty and mentions none of his disclosed conditions (App. 119). On May 13 he was refused a support person for his anxiety at the appeal meeting (App. 126–27), and his written appeal enclosed Dr. Clark's letter and offered to accept conditions, including mentorship and structured oversight (App. 62; Resp. 41). On June 2 he told Dean Barker his health was worsening and he needed time off; Dean Barker told him to reach out to the accommodations office when he was ready, and that night referred him in writing to that office. (App. 19; Resp. 66.)

*Bultemeyer*, on which the Fifth Circuit relies, holds that

> an employer cannot expect an employee to read its mind and know that he or she must specifically say "I want a reasonable accommodation," particularly when the employee has a mental illness.

*Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). A psychiatrist's letter arriving after the decision to fire was an opportunity the employer "could have used . . . to reconsider the decision to terminate his employment." *Bultemeyer*, 100 F.3d at 1286. Plaintiff, diagnosed with generalized anxiety disorder, adjustment disorder and ADHD (App. 4, 9), was under the care of Dr. Clark, whom Defendants tended to ignore; her letter reached UT Southwestern before any final decision, and no decision mentions it. (App. 63, 128, 146.) The State says "[i]n his appeal, Plaintiff admitted to unprofessionalism and dishonesty" (Resp. 4), but omits that the same exhibit contains Dr. Clark's letter, which addresses the medical context of the March events and reports that he has been stable with treatment (Resp. 41, 47; App. 63). When he tried to explain his condition, Deans Mihalic and Baker each told him there is "no mental illness for lying." (App. 10.)

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1032–33 (5th Cir. 2022), rejected liability for "verbal, ad hoc requests made to a single faculty member." The State lists *Pickett*'s three elements (Resp. 5) but omits the next sentence: "If the plaintiff proves those three elements, 'the defendants are liable simply [for] denying [the accommodation].'" *Id.* at 1032 (alterations in original) (quoting *Bennett-Nelson*, 431 F.3d at 455). *Molosso*, which the State cites, restates the proper-office rule. *Molosso v. Bd. of Supervisors Univ. of La. Sys.*, No. 25-30362, 2026 WL 799509, at *5 (5th Cir. Mar. 23, 2026) (unpublished). Here a dean referred him to OATIX in writing (Resp. 66), and

> it was unnecessary for Salamah to follow all of UT Southwestern's procedures for submitting accommodation requests to ask for an accommodation in sufficiently direct and specific terms to trigger UT Southwestern's duty to accommodate.

*Salamah v. UT Sw. Med. Ctr.*, No. 3:24-CV-0477-D, 2025 WL 1211124, at *10 (N.D. Tex. Apr. 25, 2025). The diagnosis and limitation were also open and obvious, triggering accommodations. See *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017).

## II. UTSW'S STEPS WENT BEYOND CONSCIOUS INDIFFERENCE

Defendants' shifting and conscious indifference shows in Dr. Shoultz's email of Saturday, March 22, written before any meeting with Plaintiff to four deans and two others: "I'm still planning on meeting with him in person on Monday. Will likely fail him for the TEGS block of the clerkship." (Resp. 23.) The State says he "never requested accommodation despite repeated outreach from the Office for Access & Title IX." (Resp. 4.) What followed, in the State's own Exhibits J and L, shows OATIX's manipulation of the Maxient portal. The office asked internally on June 11 to create a Maxient file from Dean Barker's referral, on June 12 forwarded its June 3 and June 10 emails to a Maxient address, and on June 16 wrote to Plaintiff: "We have received your formal request for accommodations submitted via our Maxient portal."

(Resp. 66–67; App. 135.) He never submitted a request form. (App. 20.) Its June 27 closure letter says it received information on June 12, his deadline to appeal to the Provost, that he may want accommodations. (Resp. 78; App. 128, 141.) The office pelted Plaintiff with three contacts in under two hours on June 26, at 2:02, 3:27 and 3:39 PM (App. 22, 136), knowing or having reason to know that this could push away a student with generalized anxiety disorder and ADHD. UTSW policy permits a request on a learner's behalf when illness prevents it. (Resp. 72.) Instead, when he asked on June 27 who had submitted the request and when, the office did not answer and peremptorily closed his file as withdrawn the same day, though he never asked for his file to be closed. (App. 22, 138.) It was a sham process at the end of the appeal period. In *Reyna*, this Court treated an employer's own finding that it skipped the interactive process as "an admission." *Reyna*, 2025 WL 317568, at *20.

Dr. Scott's selective memo, the account that reached the final decisionmaker, Provost Lee, does not mention Dr. Clark's letter, Plaintiff's diagnoses or his plan to take a leave of absence if reinstated, does not weigh accommodations, yet states: "Because the written material was comprehensive, I determined a meeting with Dhruv Nandakumar to discuss the appeal was not necessary." (Resp. 61–63; App. 97–99.) The State's Exhibit I, listed only as a "letter to Plaintiff, dated July 7, 2025" (Resp. 4), also contains this memo, which Plaintiff first saw attached to the final decision and had no opportunity to respond to (Resp. 60–63; App. 21, 23). He asked Dean Barker on July 6 to take a research year and received no response before the decision (App. 23), and the Provost's letter mentions neither that request nor his plan to take a leave (App. 146). UT Southwestern's failure to bring its own standards to a student who signed onto its policies shows not merely the callousness or hard conditioning perhaps expected in such a demanding program, but premeditated discrimination based on mental-health disability in its

manipulated coordination across time, including the two-month appeal period, despite Plaintiff's honors, his responsiveness to training and the Harvard rotation he had won.

A dismissal before "any opportunity to engage in an interactive process after making an accommodation request" is "itself a Rehabilitation Act violation." *Harmon v. Collier*, 158 F.4th 595, 615 (5th Cir. 2025). And omitting the disability-related context for conduct called unprofessional can support a pretext inference. *Ramsey v. San Jacinto Coll. Dist.*, No. 25-20195, 2026 WL 2268172, at *5 (5th Cir. Aug. 5, 2026) (unpublished). Viewing the evidence for the employee, this Court in *Fuller* found that an employer "stopped the interactive process of discussing an accommodation" when it "placed Fuller on leave to investigate the truth of his injury allegation rather than providing an accommodation." *Fuller v. Owens Corning Insulation Sys., LLC*, No. 3:21-cv-03197-X, slip op. at 12 (N.D. Tex. June 9, 2023).

## III. THE CAUSE OF UTSW'S FAILURE DOES NOT MATTER

Title II and § 504 impose "an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson*, 431 F.3d at 454. "Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." *Id.* at 454–55; accord *Harmon*, 158 F.4th at 608. In *Harmon*, where the discharge was "intertwined with her failure-to-accommodate claim, no evidence of animus or motive was required." *Harmon*, 158 F.4th at 615. The State's argument that UTSW acted because of conduct, not disability (Resp. 5), answers a question the statute does not ask. The State itself recounts that he had impaired judgment during a trauma rotation. (Resp. 3.)

The Fifth Circuit rejected the State's line between a disability and its effects in a § 504 case against a Texas medical school, calling it a "false distinction between the 'disability itself' and the disability's effects." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 222 (5th Cir. 2018) (unpublished). *Green*, the source of the State's "second chance" line (Resp. 6), cites

*Burch*, where the employee had not requested a cognizable accommodation: "Burch did not so request and was not so qualified." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 319–20 n.14 (5th Cir. 1997). *Green* concerned an employee whose request could not cover "two months of unexcused absences." *Green v. Medco Health Sols. of Tex., LLC*, 947 F. Supp. 2d 712, 728–29 (N.D. Tex. 2013), aff'd, 560 F. App'x 398 (5th Cir. 2014). *Hamilton* said of one employee: "Hamilton can not hide behind the ADA and avoid accountability for his actions." *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998). On that point *Harkey*, which the State cites as "collecting cases," discusses only *Hamilton* and one other case, and neither *Hamilton* nor *Harkey* decided an accommodation claim; both were discharge claims. *Harkey v. NextGen Healthcare, Inc.*, No. 21-50132, 2022 WL 2764870, at *3–4 (5th Cir. July 15, 2022) (unpublished). The State labels Plaintiff dishonest. Plaintiff was medically impaired, and there was no intent of dishonesty: he told the Committee it was a mental-health episode (App. 17), and UTSW's own psychiatrist identified untreated anxiety and impulsivity (App. 4, 63).

**IV. THE SECOND-CHANCE CASES DO NOT APPLY**

*Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012), states both halves of the rule:

> A school, if informed that a student has a disability with behavioral manifestations, may be obligated to make accommodations to help the student avoid engaging in misconduct. But, the law does not require the school to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability.

*Id.* at 465. *Halpern* fell under the second: after years of documented interventions, he told the committee his conditions did not affect his ability to participate, suggested "for the first time" in his appeal that his behavior was a manifestation of a disability, and the dean swore he "carefully considered alternatives to dismissal." *Id.* at 465–66. This case falls under the first: UTSW was informed, and spoke first, in the March 24 letter (App. 91) and Dean S. Baker's note five days

before the vote: "He reported significant lack of sleep/anxiety contributing to the behaviors. Pulled from rotation, cleared to return after Fitness for Duty. In treatment for ADHD/anxiety." (Resp. 29–30.) The State offers that exhibit only to "document his unprofessionalism," never mentions the note (Resp. 3), and files no declaration that anyone considered an alternative to dismissal or that there had been failed accommodations.

The doctrine "does not apply to plaintiffs who, through no fault of their own, have not yet had a chance to get the modifications they need." *Steere v. George Washington Univ.*, 368 F. Supp. 2d 52, 57 (D.D.C. 2005). There, as here, the school's rules gave the decisionmaker "total discretion," the request came "before dismissal," and the dean gave the disability report "no weight." *Id.* at 56–57. No one discussed academic accommodations with him while UTSW's clinic treated him from October 2024 through February 2025 or when he was cleared in April (App. 4, 9); Plaintiff had no first chance. Before March 21, 2025, he had honors in psychiatry, pediatrics, neurology, family medicine and the first two weeks of surgery, and no professionalism form between September 2023 and March 24, 2025. (App. 3–4, 98.) Each of Plaintiff's requests looked forward. (App. 12, 19–20, 23.) The duty continues: "Nothing in the Act extinguishes that obligation merely because an employer had a basis for getting rid of the employee in the past." *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016). This Court has applied that rule: "It thus makes no difference that Greenville intended to fire Busken after his leave ended, even if such termination would have been justified." *Busken v. City of Greenville*, No. 3:19-cv-02808-X, 2021 WL 5140827, at *4 (N.D. Tex. Nov. 3, 2021).

UTSW's clerkship attendance guidelines provide for an incomplete while missed clinical time is made up (App. 87), its catalog for a non-medical leave of absence (App. 137), and § 504 regulations list "changes in the length of time permitted for the completion of degree

requirements" among academic modifications. 34 C.F.R. § 104.44(a). Without student status by early 2027, however, Plaintiff cannot apply for away rotations in that cycle, and his earliest Match without giving up away rotations moves from March 2028 to March 2029, while UTSW's seven-year completion deadline runs to August 2029. (App. 33.)

## V. JURISDICTION

The State's immunity argument and cases (*Vogt*, *Warnock*, *Garrett*, *Union Pacific*, *Pennhurst* and *Daniel*) target the state-law counts and § 1983, not § 504 relief against UTSW or Title II relief against officials (Resp. 8–10). As to a state university: "We agree that the University, as a recipient of federal financial assistance, has waived its Eleventh Amendment immunity." *Bennett-Nelson*, 431 F.3d at 449. As to the officials,

> a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law.

*Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008).

## VI. IRREPARABLE HARM AND RELIEF

No money can fully compensate Plaintiff. The Match occurs once yearly. (App. 34.) Any attempt to recover future earnings would be speculative, and the injury is to his reputation, his ability to describe his status accurately as an integral aspect of employability. The State facetiously calls the harm badge color (Resp. 11), but money cannot replace it because the student badge controls entry to AAPM&R's November 11, 2026 Medical Student Orientation, also a residency fair; his podium talk is November 12. (App. 30, 32.) AAPM&R confirmed he can switch categories with a student ID or transcript, which only UTSW can issue. (App. 29–30.) As for delay (Resp. 11), this case was filed under seal on July 30, 2026, ordered unsealed effective September 15, and served on October 5 and 6 after defendants avoided service; on October 5 he first saw a UTSW faculty member would present in his session, and decided to seek

relief before the Assembly. (App. 28–31.) Plaintiff asks the Court to take judicial notice of the returns of service as to Defendants' avoiding service for two weeks in late September 2026.

On July 23, 2025, UTSW's Office of Legal Affairs emailed Plaintiff about his Doximity profile and raised a possible report to the Texas Medical Board; no one has withdrawn that email (App. 24–25, 154), and the State offers no assurance. The Registrar's July 8, 2025 dismissal notification, in the same Exhibit I, went to UTSW offices and Children's Health Medical Education but not to Plaintiff. (Resp. 64.) This Court has called a request "forbidding Defendants from reporting the reprimand to any third party" "plainly prospective." *Fisher v. Tex. Tech Univ. Regents*, No. 5:26-cv-00073-X, slip op. at 7 (N.D. Tex. June 8, 2026). Plaintiff seeks an order prohibiting dissemination of the dismissal while the case is pending, and a non-medical leave of absence for research, with no clinical duties and at the tuition and fees that apply to that leave, that "does not vacate the July 7, 2025 decision." (Proposed Order ¶¶1(a), 6(a); App. 34–35.)

The State's last two factors rest on deference to "three levels of review" (Resp. 11), but none of the three decisions mentions accommodation (App. 119–20, 128–29, 146). Cf. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380–81 (5th Cir. 2016) (deferring where the request "was considered at multiple levels of the institution" and the record was "devoid of evidence of malice, ill-will, or efforts . . . to impede" the student's progress). The obligation of the decisionmakers to weigh effective accommodations was not upheld. See *Chevron Phillips*, 570 F.3d at 621. The State seeks no security. Plaintiff is agreeable to the file being unsealed.

Dated: November 2, 2026

Respectfully submitted,
LLG NATIONAL LAW GROUP
Renee Walker
Renee Walker, Esquire
Bar Card Number: 16958480
539 W. Commerce St. Ste. 4233, Dallas, TX 75208
(915) 206-3510 | Renee.walker@llgnational.com
Attorney for Plaintiff